IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
SEP 21 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

VLADIMIR MOUTAFOV,                                )
1124 Haycock Rd., Apt. B-1, Falls Church, VA 22046;  )
                                                  )
                        Plaintiff,                )   Case No.
        v.                                        )
                                                  )
MICHAEL CHERTOFF, Secretary,                      )
U.S. Department of Homeland Security,             )
425 Murray Drive, Building 410,                   )
Washington, DC 20528;                             )
                                                  )
U.S. DEPARTMENT OF HOMELAND SECURITY,             )
425 Murray Drive, Building 410,                   )
Washington, DC 20528;                             )
                                                  )
ROBERT DIVINE, Acting Director,                   )
U.S. Citizenship and Immigration Services,        )
20 Massachusetts Avenue, N.W.,                    )
Washington, DC 20529;                             )
                                                  )
U.S. CITIZENSHIP AND IMMIGRATION SERVICES;        )
20 Massachusetts Avenue, N.W.,                    )
Washington, DC 20529;                             )
                                                  )
ROBERT S. MUELLER, Director,                      )
Federal Bureau of Investigation,                  )
J. Edgar Hoover Building,                         )
935 Pennsylvania Avenue, N.W.,                    )
Washington, DC 20535;                             )
                                                  )
and                                               )
                                                  )
FEDERAL BUREAU OF INVESTIGATION,                  )
J. Edgar Hoover Building,                         )
935 Pennsylvania Avenue, N.W.,                    )
Washington, DC 20535;                             )
                                                  )
                        Defendants.               )

CASE NUMBER 1:05CV01860
JUDGE: Rosemary M. Collyer
DECK TYPE: TRO/Preliminary Injunction
DATE STAMP: 09/21/2005

**VERIFIED COMPLAINT FOR MANDAMUS AND
DECLARATORY JUDGMENT**

1

The Plaintiff, Vladimir Moutafov, by his attorney, Thomas A. Elliot, complaining of the Defendants, MICHAEL CHERTOFF, Secretary, U.S. Department of Homeland Security, U.S. DEPARTMENT OF HOMELAND SECURITY, EDUARDO AGUIRRE, JR., Director, U.S. Citizenship and Immigration Services, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ROBERT S. MUELLER, Director, Federal Bureau of Investigation, and FEDERAL BUREAU OF INVESTIGATION, and the defendant agencies, states and alleges as follows:

## PREFATORY STATEMENT

1. This is an action to compel the Defendants and those acting under them to immediately and forthwith take all appropriate action to execute and process a visa application made under the 2005 Diversity Visa Immigrant Visa Program ("2005 DV Lottery"), described more fully below.

## JURISDICTION

2. This is a civil action brought pursuant to 8 U.S.C. § 1329 and 28 U.S.C. § 1331 and § 1361, to redress the deprivation of rights, privileges, and immunities secured to the Plaintiff, under which statutes jurisdiction is conferred, to compel the individual Defendants, and the Defendant agencies, to perform the duties they owe the Plaintiff, Vladimir Moutafov. Jurisdiction is also conferred by virtue of 5 U.S.C. § 704.

## VENUE

3. Venue is proper in the United States District Court for the District of Columbia, pursuant to 28 U.S.C. § 1391(e)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## THE PLAINTIFF

4. The Plaintiff, Vladimir Moutafov, is a citizen of Bulgaria who currently resides in Falls Church, Virginia. Moutafov applied for an adjustment of status with Defendant Department of Homeland Security's U.S. Citizenship and Immigration Services ("CIS") on or about January 18, 2005, pursuant to the 2005 DV Lottery.

## FACTS PERTAINING TO THE PLAINTIFF'S APPLICATION

5. In or about September 2000, Plaintiff Vladimir Moutafov, along with his wife Marlena Moutafov and his minor child Racho Moutafov, arrived in the United States on an A-1 diplomatic visa and diplomatic passport, and worked for the Embassy of Bulgaria from September 2000 until September 2003.

6. In September 2003, Vladimir Moutafov enrolled as a full-time MBA student at Frostburg State University in Frostburg, Maryland, quit the Bulgarian diplomatic service, waived his diplomatic status, and filed for an F-1 status.

7. In December 2003, Vladimir Moutafov's F-1 status was approved, and F-2 status was approved for his wife Marlena and his son Racho. (Exh. 1)

8. On July 8, 2004, Vladimir Moutafov's wife Marlena received a "Congratulations!" letter from CIS informing her that she had been selected under the 2005 DV Lottery to be processed for an adjustment of status. (Exh. 2) Adjustment of status is the administrative process of declaring an applicant to be a lawful permanent resident of the United States without leaving the country. Immigration and Nationality Act § 245, 8 U.S.C. § 1255.

9.  Pursuant to CIS's written instructions, Vladimir Moutafov, his wife Marlena, and their minor child Racho applied for permanent resident status under the 2005 DV Lottery at the earliest opportunity, on or about January 18, 2005.

10. Vladimir Moutafov's CIS file number is A99 253 129.

11. Marlena Moutafov's CIS file number is A99 253 130.

12. Racho Moutafov's CIS file number is A99 253 131.

13. The Department of Homeland Security acknowledged receipt of the applications of Vladimir, Marlena, and Racho Moutafov on March 1, 2005. (Exh. 3)

14. Pursuant to the requirements of the application process, the Moutafovs submitted their fingerprints to CIS on or about March 8, 2005.

15. On March 15, 2005, the Moutafovs were interviewed by a CIS officer, who advised Marlena Moutafov and Racho Moutafov that their background checks had been completed. Vladimir Moutafov was advised by the officer that his FBI name check was still pending, and he was given a letter indicating that his case had been continued for "G-325 FBI Name Check." (Exh. 4) The letter stated: "There are no means in which to predict the amount of time security checks will require to clear; therefore, please wait 180 days after the date of interview before making an inquiry." (Exh. 4) The interviewing officer asked Vladimir Moutafov whether he had traveled a lot, to which he responded that he had traveled to about 40 countries and had lived for more than a year in six different countries (Bulgaria, Russia, Congo-Brazzaville, Ethiopia, Netherlands, United States) on three continents. The officer informed Mr. Moutafov that the FBI name check could take as long as six months, but stated that Mr. Moutafov "should not panic."

4

16. On or about April 4, 2005, Vladimir, Marlena, and Racho Moutafov each received in the mail from CIS an Employment Authorization Document (EAD), category C-09, valid until March 27, 2006.

17. On or about May 4, 2005, Marlena Moutafov and Racho Moutafov each received in the mail from CIS a Notice of Action (Form I-797C), entitled "Welcome to the United States of America," informing them that their applications for permanent residence had been approved. (Exhs. 5, 6)

18. On or about May 12, 2005, Marlena and Racho Moutafov each received in the mail from CIS an Alien Registration Receipt Card (Form I-551), commonly known as a Resident Alien card or "green card."

19. On June 21, 2005, Vladimir Moutafov sent a letter of inquiry to Director Phyllis Howard of the CIS Washington District Office, with copies to the CIS officer who had interviewed him and his family members, as well as to his attorney Farhat T. Ahmed. (Exh. 7)

20. On July 11, 2005, Vladimir Moutafov made an InfoPass appointment with the Washington District Office of CIS in Fairfax, Virginia and met with Information Officer C. Clark. (Exh. 8) Officer Clark informed Mr. Moutafov that there was "no way" to get the FBI to expedite his name check, that the FBI "did not care" whether it was a DV Lottery case or not, that "it will take as long as it takes" and "when it is done it is done." Officer Clark suggested "you take this up with the FBI yourself," wrote an FBI telephone number (202-324-2399) on a yellow post-it note, and advised Mr. Moutafov to call that number. Mr. Moutafov repeatedly asked whether the FBI was aware of the

deadline for DV Lottery cases, and Officer Clark repeatedly answered that it made no difference to the FBI whether it was a DV Lottery case or not.

21. On July 11, 2005, Vladimir Moutafov telephoned the FBI name check public inquiry voice line (202-324-2399), as he had been advised to do by CIS Officer Clark. Mr. Moutafov received a recorded message which stated "Effective today, September 24, 2004, phone inquires will no longer be accepted," and which advised that all matters concerning name checks should be addressed by e-mail.

22. On July 11, 2005, as he had been advised by the FBI public inquiry voice line, Vladimir Moutafov sent an e-mail to the FBI National Name Check Program (NNCP), described his situation, and requested timely competion of the name check process. (Exh. 9)

23. On July 26, 2005, Vladimir Moutafov made an InfoPass appointment with CIS and went to the CIS Washington District Office together with his attorney Farhat T. Ahmed. (Exh. 10) Mr. Moutafov and his attorney first spoke to Information Officer D.A. Hawkins, and Mr. Moutafov then spoke to Supervisory District Adjudication Officer June Williams. Ms. Williams advised Mr. Moutafov that a reminder would be sent from the district office to CIS Headquarters suggesting that Headquarters remind the FBI about DV Lottery cases; that the letter would mention specific cases and names, including Mr. Moutafov's; that CIS would do their best to complete all cases by the end of August 2005, but that there was no guarantee; and that the letter to CIS Headquarters would be sent "today or tomorrow at the latest."

24. On July 27, 2005, Vladimir Moutafov's attorney Farhat T. Ahmed sent an e-mail to Deputy Director Susan Dibbins of the Washington District Officer of CIS inquiring about the status of Mr. Moutafov's case.

25. On July 27, 2005, Vladimir Moutafov sent a second e-mail to the FBI NNCP, again requesting timely competion of the name check process. (Exh. 11)

26. On August 5, 2005, Vladimir Moutafov telephoned the FBI name check status main line (202-324-3625) and spoke to an officer who advised him that he should send an e-mail inquiry. Mr. Moutafov stated that he had sent two e-mails, and the officer responded that this was the reason for the backlog; that only one e-mail should have been sent; that the FBI would eventually respond; that there was no other way to check the status of a name check; and that they received approximately 4,000 e-mails per day.

27. On August 6, 2005, Vladimir Moutafov sent letters of inquiry to the following officers in charge of NNCP: David Hardy, Chief, Records/Information Dissemination Section (Exh. 12); William Hooton, Assistant Director, Record Management Division (Exh. 13); Renee Morton, Supervisor, NNCP (Exh. 14); and the NNCP Unit (Exh. 15).

28. On August 24, 2005, Vladimir Moutafov sent by facsimile to the FBI a request to expedite his name check and inform him of the status of his case. (Exh. 16) On the same date, Mr. Moutafov sent facsimile requests to Senator George Allen of Virginia (Exh. 17), Senator John Warner of Virginia (Exh. 18), and Representative James Moran of Virginia (Exh. 19), asking them to inquire with the FBI on his behalf.

29. On August 25, 2005, Vladimir Moutafov hired a new attorney, Jim Alexander of Maggio & Kattar, to try and obtain approval of his adjustment of status application.

30. On August 26, 2005, attorney Alexander sent an e-mail message to Deputy Director Susan Dibbins of the Washington District Officer of CIS to inquire about Mr. Moutafov's case. (Exh. 20) Ms. Dibbins responded the same day and referred attorney Alexander to Supervisory District Adjudication Officer June Williams. (Exh. 21) Attorney Alexander assured Mr. Moutafov that he would pursue the matter with Ms. Williams.

31. On August 29, 2005, Peter Hearding from Representative Jim Moran's office called Mr. Moutafov to inform him that they would inquire with the FBI, and stated that once Mr. Moutafov had passed the interview, the September 30 deadline did not matter. Mr. Moutafov disagreed with Mr. Hearding but thanked him for his efforts.

32. On August 31, 2005, Mr. Moutafov's former attorney Farhat T. Ahmed sent an e-mail to CIS Deputy Director Susan Dibbins, requesting that she reserve a visa number for Mr. Moutafov pending FBI clearance and advising that Mr. Moutafov is the sole provider for his wife and son, who are both already permanent residents. (Exh. 22)

33. On September 1, 2005, attorney Jim Alexander sent an e-mail inquiry to Supervisory District Adjudication Officer June Williams, along with his Notice of Entry of Appearance (Form G-28). (Exh. 23). On the same day, Mr. Moutafov informed his former attorney Farhat T. Ahmed that he had hired a new attorney.

34. On September 6, 2005, Supervisory District Adjudication Officer June Williams responded to attorney Alexander's inquiry by e-mail, stating as follows:

8

"Checks have not been completed. We are aware of the situation, however we must wait for a response." (Exh. 24)

35. On September 12, 2005, Mr. Moutafov telephoned the FBI name check status main line (202-324-3625) and spoke with Denise from the "office of Mr. Hardy" (Records/Information Dissemination Section, Records Management Division). Mr. Moutafov inquired about his name check and was asked by Denise whether he had sent an e-mail, to which he responded "Yes, in July." Denise then stated that it takes about 20 weeks to respond and that they were currently responding to emails from February. Mr. Moutafov advised that he was a DV Lottery winner and had a deadline, to which Denise replied "Send a fax, I think they're working on these right now."

36. On September 12, 2005, Mr. Moutafov resent by facsimile his message of August 24, 2005 to fax number 202-324-3367 at the FBI, with additional entreaties in black marker. (Exh. 25)

37. On September 12, 2005, Mr. Moutafov telephoned the FBI NNCP and again spoke with Denise, who stated that "I just received your fax and gave it to the supervisor." Denise also stated that they could not contact Mr. Moutafov with a result or a status report in less than a week.

38. On September 13, 2005, Patty Kennedy of Senator Warner's office called Mr. Moutafov to say that she had spoken with the CIS congressional liaison officer and asked that Mr. Moutafov's case be expedited, and that the person she spoke with promised to try.

39. On September 15, 2005, attorney Jim Alexander sent an e-mail to the FBI, requesting that Mr. Moutafov's security check be expedited. (Exh. 26)

40. On September 16, 2005, Mr. Moutafov conducted an on-line status search on the CIS website (www.cis.gov), which revealed that results from his fingerprint review were received on March 15, 2005, but that the case was still not approved. (Exh. 27)

41. On September 16, 2005, Mr. Moutafov hired his current attorney, Thomas A. Elliot of Elliot & Mayock, and requested that he prepare a complaint for mandamus on his behalf.

42. To date, Vladimir Moutafov has not been given any information as to when his application for adjustment of status to permanent resident will be processed and adjudicated and when, if ever, a permanent visa will be issued.

## THE DEFENDANTS

43. The Defendants are branches, agencies, or employees of the federal government who alone or collectively have the ministerial duty and power to complete the visa or adjustment of status applications of 2005 DV Lottery winners and, if approved, to issue visas or grant adjustment to the applicants.

## THE DIVERSITY LOTTERY PROGRAM

44. Through the diversity visa program, a limited number of immigrant visas are made available to individuals from countries that historically have had low rates of immigration to the United States. 8 U.S.C. § 1153(c). Under the program, the U.S. Attorney General identified "low-admission states" and allocates diversity visas (immigrant visas made available through the diversity visa program) to natives of these states according to a formula established by statute. 8 U.S.C. § 1153(c)(1). A diversity visa enables the recipient to move to the United States as a lawful permanent resident (or,

alternatively, to remain in the United States as a lawful permanent resident if the recipient is already lawfully within the United States and if the Attorney General adjusts the recipient's status) under the Immigration and Nationality Act ("INA"). To be eligible for a diversity visa, an alien must have a high school education or have, within five years of the date of application for the visa, at least two years of work experience in an occupation that requires at least two years of training or experience. 8 U.S.C. § 1153(c)(2). If the alien is entitled to receive a visa under the diversity visa program, the alien's spouse and minor children are entitled to the same status. 8 U.S.C. § 1153(d).

45.     The United States Department of State administers the diversity visa program. Eligible applicants must file a petition to be considered for a diversity visa, and after the filing period has ended, a computer randomly orders the petitions. 22 C.F.R. § 42.33(c). The U.S. State Department then selects, in rank order, a quantity of petitions estimated to be sufficient to ensure, to the extent possible, that all diversity visas authorized for issuance are issued. *Id.* These selected applicants – commonly referred to as diversity visa program "lottery winners" – are notified of their selection and receive instructions on how to apply for a diversity visa. *See* Notice of Registration Period and Requirements for the Fourth Year of the Diversity Immigrant Visa Program, 61 Fed. Reg. 58,730, 58,731 (Nov. 18, 1996).

46.     The process to obtain a visa is lengthy: the applicant must submit numerous documents to the National Visa Office (including a passport, a birth certificate, police certificates, court records, prison records, military records, and evidence of either education or work experience) and attend a visa interview.

47. Diversity visa lottery winners who reside abroad must travel to a United States embassy to complete the visa eligibility process. If a lottery winner is lawfully present in the United States, however, the alien may remain in the United States and apply to the Department of Homeland Security ("DHS") to adjust his status to that of a lawful permanent resident. 8 U.S.C. § 1255(a). This adjustment procedure enables a lottery winner lawfully residing in the United States, such as an alien with a nonimmigrant student status, to receive lawful permanent resident status (also known as "immigrant" status) without returning to his native country.

48. The DHS, at its discretion, may adjust an applicant's status to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for adjustment of status, (2) the alien is eligible to receive an immigrant visa and is admissible for permanent residence, and (3) a visa is immediately available to the alien at the time the application is filed. 8 U.S.C. § 1255(a). According to the statute, "[a]liens who qualify, through random selection, for a visa under [the diversity visa program] shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected." 8 U.S.C. § 1154(a)(1)(I)(ii)(II).

49. The State Department has promulgated regulatory provisions that automatically revoke diversity visa petitions and prevent the issuance of visas and the allotment of visa numbers after midnight of the final day of the relevant fiscal year. *See* 22 C.F.R. § 42.33(a)(1) ("The eligibility for a visa . . . ceases at the end of the fiscal year in question. Under no circumstances may a consular officer issue a visa or other documentation to an alien after the end of the fiscal year during which an alien possesses diversity visa eligibility."); 22 C.F.R. § 42.33(e) ("A petition . . . shall be valid until

Midnight of the last day of the fiscal year for which the petition was submitted. At that time, the petition is automatically revoked . . . and no diversity visa numbers can be allotted after that date."); 22 C.F.R. § 42.33(g) (Diversity immigrant visa numbers "shall be allotted only during the fiscal year for which a petition to accord diversity immigrant status was submitted and approved. Under no circumstances shall immigrant visa numbers be allotted after Midnight of the last day of the fiscal year for which the petition was submitted and approved.").

## CLAIMS

50. Defendants have unreasonably delayed and failed to process the Plaintiff's adjustment of status application.

51. Defendants have grossly delayed and with no legal basis or authority refused to complete the Plaintiff's adjustment of status application.

52. Defendants' unjustified delays have deprived the Plaintiff of his rightful lawful permanent resident status, to which the Plaintiff is entitled under the Immigration and Nationality laws.

53. The Plaintiff has exhausted all possible administrative remedies that may exist, in that there is no administrative remedy for error, delay, and inaction by the FBI and CIS.

54. Completing the Plaintiff's application for adjustment of status is a purely ministerial non-discretionary act which the Defendants were under obligation to perform in a timely manner.

55. Defendants' actions are without justification. Defendants' error, delay, and inaction have forced the Plaintiff to resort to this Court for relief, and the Plaintiff is

entitled to reasonable attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(2).

WHEREFORE, the Plaintiff prays that this Court:

A. Compel Defendants and those acting under them to immediately perform their legal duty to complete all remaining process of the Plaintiff's adjustment of status application, including processing the Plaintiff's fingerprints, and issue and reserve a visa number to the Plaintiff, and issue a permanent visa (or Resident Alien card) to the Plaintiff;

B. Alternatively, and solely in the event a visa is not issued before September 30, 2005, compel Defendants and those acting under them to reserve a visa number for the Plaintiff that will not expire on September 30, 2005, and until Defendants have properly and fully completed their ministerial duties;

C. Declare that there are no just grounds to suspend issuance of permanent resident status and all other appropriate documents to the Plaintiff;

D. Grant reasonable attorneys' fees and costs of court under the Equal Access to Justice Act;

E. Grant such other further relief as this Court deems proper.

Respectfully submitted,
ELLIOT & MAYOCK

*/s/ Thomas A. Elliot*
Thomas A. Elliot

1629 K Street, N.W., Suite 1250
Washington, DC 20006
(202) 429-1725
DC Bar No. 259713

Attorney for Plaintiff

## **VERIFICATION**

I, Vladimir Moutafov, declare pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge and belief.

_____
VLADIMIR MOUTAFOV